UNITED STATES  DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICKY P. CURRY                              CIVIL ACTION

VERSUS                                      NUMBER: 09-3799

SHERIFF MARLIN GUSMAN, ET. AL.              SECTION: "N"(5)


**REPORT AND RECOMMENDATION**


Ricky P. Curry, hereinafter referred to as plaintiff, has
instituted suit on the standardized form provided to inmates for
lodging a complaint pursuant to 42 U.S.C. §1983.  Originally named
as defendants herein were Orleans Parish Criminal Sheriff Marlin
Gusman; Dr. Higgins, the Psychiatric Director at the jail; various
unnamed nurses; and, Mylan Pharmaceuticals, Inc. ("Mylan"), the
manufacturer of a medication which plaintiff was given while he was
incarcerated in the Orleans Parish Prison.[1]/ Although plaintiff's
original complaint did not request a trial by jury, he subsequently

---

[1]/ Mylan was dismissed from this litigation per order of the
Court dated January 19, 2010.  (Rec. doc. 30).  A Rule 54(b)
judgment on that order was signed by the District Judge on April
29, 2010. (Rec. doc. 43).

filed a pleading on April 1, 2010 seeking one. (Rec. doc. 40).  On June 8, 2010, the Court entered an order recognizing that, since Mylan had sought trial by jury, plaintiff's motion was unnecessary since the case was already being carried as a jury matter on the Court's docket.  (Rec. doc. 46).

Plaintiff's initial complaint centered around an alleged deliberate indifference to his serious medical needs in that he failed to receive blood pressure medication which he needed. Plaintiff advised that he was given 21 pills on a Wednesday which was to last him the entirety of the week.  He further advised that he would run out of pills on a Tuesday and, if medication was not timely passed out the following day, he could go for a period of time without his medication which caused his blood pressure to become dangerously elevated.  In the original complaint, he also alleged that he was receiving the "wrong" psychiatric medication in that it made him ill and, therefore, that he refused to take it. (Rec. doc. 1, pp. 4-9).

At an evidentiary hearing which went forward on September 16 and 23, 2010, plaintiff testified that Dr. Higgins conspired to kill him and that Sheriff Gusman was named as a defendant in this litigation because he was the employer of Dr. Higgins.  It is

plaintiff's contention that Dr. Higgins retaliated against him, placing him in restraints on the psychiatric tier under harsh conditions, because of the filing of this lawsuit. Before proceeding further, it is necessary to note that <u>respondeat superior</u> is not a concept which is applicable to proceedings brought under §1983 for purposes of making an employer or supervisor responsible for the actions of a subordinate. <u>Harvey v. Andrist</u>, 754 F.2d 569, 572 (5th Cir.), <u>cert</u>. <u>denied</u>, 471 U.S. 1126, 105 S. Ct. 2659 (1985); <u>Lozano v. Smith</u>, 719 F.2d 756, 768 (5th Cir. 1983); <u>Douthit v. Jones</u>, 641 F.2d 345, 346 (5th Cir. 1981).

Plaintiff testified that he was arrested on December 4, 2008 and that he remained in the Orleans Parish Prison system until his transfer to the Hunt Correctional Center on February 23, 2010. It is plaintiff's contention that he was wrongly diagnosed as schizophrenic by Dr. Higgins for which Stellazine, by itself and without Cogentin, was prescribed. Plaintiff contends that prescribing him Stellazine without the companion drug caused him to have seizures which resulted in his knocking one of his teeth out. Plaintiff further advised that he had a prior diagnosis for manic depression and that he had taken psychotropic medications at a prior time but apparently Stellazine was not one of them.

3

In June of 2009, plaintiff advised that he was placed on the psychiatric unit on suicide watch.  At that time he was placed on a bed and strapped down for 30 hours.  Because the straps over his chest and stomach were too tight, plaintiff testified that he had problems breathing.  In addition, plaintiff advised that he was not allowed to use the bathroom during that time; nor was he given food, water, or medication.  Plaintiff further testified that he had been seen by another doctor at the jail, Dr. Alexander[2]/, who opined that he was not suicidal but that Dr. Higgins placed him on suicide watch nevertheless.  Plaintiff testified that Dr. Higgins told him that "he was going to help him die" when he placed him on suicide watch.  When specifically questioned as to whether plaintiff had any evidence that Sheriff Gusman knew what Dr. Higgins was doing, plaintiff stated that he did not.

In addition, plaintiff testified that he suffered from high blood pressure so he needed Catapres to keep it under control. Plaintiff further testified that his blood pressure would elevate to 160/100 and 170/120 because he was not properly receiving his

---

[2]/ Dr. Samuel Gore, the Medical Director at Orleans Parish Prison, testified that Ms. Alexander is a nurse, not a physician. In one of plaintiff's filings, he so acknowledged this as well. (Rec. doc. 31, p. 3).

medication.   Specifically, plaintiff testified that he had high blood pressure from April until December of 2009 because he did not receive his medication in a proper manner.  He did not document any physical harm which he suffered as a result of this condition.

Plaintiff further advised that he was placed on the medical tier of the jail in December of 2009, at which time he was stabbed by another inmate.  He does not know the name of the person who allegedly stabbed him.  He then stated that he asked to be placed in protective custody, which he did not receive, and that he was stabbed a second time two days later.  Again, he cannot name the individual who allegedly stabbed him.  Plaintiff testified that he received medical care at the jail when he was stabbed and was not taken to the hospital.

In support of his claims, plaintiff elicited testimony from Eddie Williams, a registered nurse working for the Sheriff's Office.  Mr. Williams testified that there was a problem with plaintiff taking his medications as ordered which resulted in his being placed under direct observation by staff when he took his blood pressure pills.  While under direct observation, plaintiff's blood pressure was under appropriate control.  Plaintiff was placed on direct observation from October 13, 2009 until his transfer out

5

of the facility.   According to Mr. Williams, plaintiff was on Catapres and Atenolol, as well as HCTZ for high blood pressure. Records reflect that plaintiff received his medications continually and that a nurse would always sign the records to reflect that the medications had, in fact, been dispensed.

It was plaintiff's contention that Mr. Williams would have information pertaining to his being stabbed.   Mr. Williams testified that there is nothing in plaintiff's medical records reflecting plaintiff's being attacked and/or stabbed. Nor does Mr. Williams have an independent recollection of that happening.   Mr. Williams was involved in plaintiff's placement on the psychiatric unit in June of 2009, which was because plaintiff was upset as his wife had allegedly died.

In response, the Sheriff presented the testimony of Dr. Samuel Gore, Medical Director at the jail, and Dr. Charles Higgins, defendant herein.   Dr. Gore testified that he remembered the plaintiff and had reviewed all of his medical records.   Dr. Gore stated that, when plaintiff came to the jail in December of 2008, his blood pressure was 130/100.   Plaintiff stated that he was taking Clonodine, i.e., Catapres, at that time.   Another longer acting medication was prescribed, i.e., Verapamil, but plaintiff

6

preferred to go back on Catapres and that was allowed.  Plaintiff
was seen periodically at the jail clinic and, later in December of
2008, his medication was increased.  A further medication, HCTZ,
was added in February of 2009 because plaintiff's blood pressure
was elevated.

In May, 2009, plaintiff's blood pressure was felt to be
controlled on his medication.  But, when seen on September 1st, his
blood pressure was 160/100 which was considered to be hypertensive.
There was a note in his medical records that plaintiff had not
taken his medications that morning.  For the three month period
before September 1st, plaintiff's pressure ranged from normal to
elevated.  Dr. Gore testified that plaintiff was receiving a weekly
dose of his medications and that plaintiff complained of running
out of medicine before the next pass-out of prescribed drugs.  Jail
personnel felt that he should have had sufficient medications and
some time in October, it was determined that he would be watched
daily to monitor his proper taking of blood pressure medicine.  He
was also told not to sell or trade his medications.

Dr. Gore testified that plaintiff had routine visits because
of his blood pressure and that he was never in a position of not
getting treatment for his condition.  As to Curry's psychiatric

7

medications, Dr. Gore testified that plaintiff's medical records reflect that he was given Stellazine and Cogentin together.  They were stopped on May 27, 2009 when plaintiff said that he was not having symptoms and that he did not want to take them.  In June of 2009, Curry was sent to the psychiatric ward because of being upset that his wife had died.  He was kept in restraints for one day and then stayed there another ten days, after which he was put back into general population.

According to Dr. Gore, there is no indication in plaintiff's medical records that he was ever stabbed and, further, that had this happened, it would have been so noted in his records.  On February 4, 2010, plaintiff filed a grievance about being stabbed while on the medical unit in December of 2009; he was seen in the medical department on February 17th and there is no mention at that time about plaintiff's being stabbed.  Indeed, on January 20, 2010, before filing the grievance, he saw a doctor with no mention of a stab wound.

Lastly, Dr. Charles Higgins, Psychiatric Director at the jail and a defendant herein, appeared and testified.  Dr. Higgins verified that he had reviewed plaintiff's medical records and that he remembered Mr. Curry.  Initially, plaintiff reported a history

8

of taking Thorazine and it was prescribed for him on March 3, 2009. On April 22, 2009, the medication was changed to Stellazine and Cogentin, which plaintiff initially refused to take and ultimately stopped taking in May, 2009.  Plaintiff stated that he wanted to receive Sinequan which is an antidepressant and, in Dr. Higgins' opinion, inappropriate for plaintiff's diagnosis.  In addition, it was felt that plaintiff was possibly malingering.

At some point, plaintiff reported that his wife had passed away, which resulted in his being placed on suicide watch.  Dr. Higgins advised that plaintiff was threatening to kill himself, causing plaintiff to be placed in restraints where he remained overnight.  Later, plaintiff recanted and stated that he had lied about his wife's death.  Dr. Higgins testified that plaintiff was not put in restraints for retaliatory purposes and that he had no knowledge of feces or urine, as contended by plaintiff, being on the suicide bed where plaintiff was restrained.  According to Dr. Higgins, the bed is cleaned after each use.  Further, according to Dr. Higgins, there is nothing in jail records to indicate that plaintiff was, in fact, stabbed.

Plaintiff has instituted suit herein in forma pauperis pursuant to 28 U.S.C. §1915.  A proceeding brought in forma

pauperis may be dismissed as frivolous under §1915(e)(2)(B)(i) if the claim alleged therein has no arguable basis in law or fact, Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993), or if it fails to state a claim upon which relief can be granted.  28 U.S.C. §1915 (e)(2)(B)(ii).  See also 28 U.S.C. §1915A(b), 42 U.S.C. §1997e(c). The Court is also authorized to look behind the mere allegations of the complaint to examine the evidence which plaintiff might produce in order to determine if a matter should be dismissed as frivolous and/or for failing to state a claim upon which relief might be granted.  Neitzke v. Williams, 490 U.S. 319, 327, 109 S. ct. 1827, 1833 (1989).  Giving the instant allegations a liberal reading, it the recommendation of the undersigned that this matter be dismissed as frivolous and for failing to state a claim upon which relief can be granted.

A review of the administrative grievances which plaintiff lodged with the Sheriff prior to the filing of this litigation reveals that he has not exhausted his administrative remedies as the law requires.  42 U.S.C. §1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until

such administrative remedies as are available are exhausted." Defendants have raised the failure to exhaust administrative remedies in their answers to plaintiff's original and amended complaints. (Rec. docs. 10, p. 4; 14, p. 3).

Orleans Parish Prison utilizes a three-step grievance procedure which must be exhausted, i.e., all steps must be exhausted before an inmate may institute suit. A review of the grievance documents furnished by the Sheriff's Office to the Court reflects that plaintiff has not completed the final step of the procedure on any of the claims which he has filed herein. In his initial complaint, plaintiff acknowledged that he had not completed the process when, in answer to Question II(D) on his §1983 form, plaintiff informed the Court that "allmost [sic] all steps (of the grievance process) completed, but they take to [sic] long and no relief. ... I don't like Step 2 response. I'm scared." (Rec. doc. 1, p. 3).

These are insufficient reasons for plaintiff not to have exhausted his administrative remedies. Therefore, his claims cannot otherwise go forward. However, independent of this, based on the evidence which the Court received, plaintiff still cannot prevail on his current claims.

11

Giving plaintiff's allegations a liberal reading, he raises three issues, i.e., a failure-to-protect claim based upon his being stabbed, a claim for deliberate indifference to his serious medical needs, and a retaliation claim. As to the former claim, it is clear that prison officials have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976-77 (1984). However, not every injury inflicted by one inmate against another inmate rises to the level of a constitutional violation. Id. at 834, 114 S.Ct. at 1977; Horton v. Cockrell, 70 F.3d 397, 400 (5th Cir. 1995). To establish a failure-to-protect claim, an inmate must show that the conditions of his incarceration posed "a substantial risk of serious harm" and that prison officials were deliberately indifferent to his need for protection. Farmer, 511 U.S. at 834, 114 S.Ct. 1977.

The Court has independently reviewed plaintiff's medical records and administrative grievances. There is nothing therein to reflect that he was, in fact, stabbed at any point while incarcerated in the Orleans Parish Prison system. The grievance records lodged by plaintiff reveal that he complained on March 4, 2009 that "the homosexual pull [sic] a pen and tried to make me

12

have sex with him." At that time, plaintiff sought to be placed in protective custody. A week later on March 10, 2009, plaintiff complained that his prior grievance had not been addressed and again sought protective custody "after bien [sic] assaulted with a ink pen for 'sex' by a homosexual." Noting that both grievances were received by the Warden on April 21, 2009, it was further notated that plaintiff had been moved to tier C-2 as of April 4, 2009, thereby alleviating the threat about which he complained. Curry's medical records do not reveal that he was treated for any physical injury attendant to this incident. And plaintiff's grievances do not state that he was stabbed but merely threatened by another inmate.

There is a further grievance dated December 22, 2009, in which plaintiff stated that he "was jumped, beat up last night on D-2". Complaining that he been moved into proximity with "2 of the other people that jumpt [sic] me down here", Curry again sought protective custody. Jail records indicate that this complaint was received on February 23, 2010 by the Warden and that plaintiff had already left the facility at that time, rendering the request moot. On December 24, 2009, plaintiff filed yet another grievance directed to "Nurse Eddie" stating that "you and captain said ya'll

13

was gonna put me on the 9th floor HOD after the last assault on me in OPP. But they didn't know where to put me, so they put me on 3." Plaintiff sought to be transferred to the 9th floor and to get his prescribed medications. On January 11th, plaintiff was advised that he had received his medications as prescribed and that he should address any location change request to the Warden of his facility.

Jail records, in fact, reflect that following whatever incident prompted plaintiff's grievance of December 22, 2009, he was transferred from the location of the problem in Old Parish Prison to another building, i.e., Central Lockup, on December 23, 2009. That apparently rectified the immediate problem as he wrote another grievance on February 4, 2010 which was received by the Warden on the same date. In that document, plaintiff stated that he had been "moved from O.P.P. medical tier in December last year by Nurse Eddie and the black captain cause I got stab inkfed [sic] up on D-1 and D-2 and moved to CLU"; he acknowledged that, following that move, he had "no problem." With this grievance, plaintiff advised of a new problem and was told by the Warden that he would be moved for his safety to another location, which in fact occurred that same day.

14

Again, medical records do not reflect that plaintiff was stabbed on December 22, 2009. In fact, as noted above, his grievance pertaining to the incident does not indicate a stabbing, rather that he had been beaten in some altercation. Medical records do not indicate the need for treatment for an injury of any type on or around that date. Indeed, plaintiff filed sick call requests on both December 24th and 25th, 2009. Neither mentioned a stabbing nor a beating but were requests for different medications. Plaintiff was, prior to the alleged incident on December 22nd, receiving pain medication in the form of Naproxen for another ailment from which he was suffering. He did not request a change of medication or an increase in same based upon the alleged mishap that he now claims occurred.

Furthermore, plaintiff could not identify the name of the individual(s) who allegedly assaulted him. Nor did he contend that he had warned deputies in advance that it was unsafe for him to remain around specific individuals or he would be injured. Because Curry did not suggest that the defendants knew he would be attacked by specific people or knew he otherwise faced an excessive risk to his health or safety, plaintiff cannot maintain his claim that defendants were deliberately indifferent to his safety. Farmer,

15

511 U.S. at 837, 114 S. ct. at 1979.   Moreover, there is no allegation on plaintiff's part that Sheriff Gusman was personally involved in the decision to house him in any specific area of the jail or that Dr. Higgins had reason to know that plaintiff was in danger from any specific inmate.   As such, there is no causal connection between the actions or inactions of any of these defendants and the incidents which plaintiff alleges occurred. Douthit, 641 F.2d at 346.

As to plaintiff's second claim of deliberate indifference to his serious medical needs, the facts do not support that he has a valid claim upon which relief might be granted.   The jurisprudence is well-established that prison officials violate the Eighth Amendment only when they demonstrate deliberate indifference to a prisoner's serious medical needs constituting an unnecessary and wanton infliction of pain.   Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323 (1991).   Deliberate indifference is an "extremely high" standard to meet.   Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006)(internal quotation omitted).   A prison official shows deliberate indifference if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

16

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837, 114 S. Ct. at 1979.  Such a showing requires the inmate to allege that prison "officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" <u>Domino v. Tex. Dept. of Criminal Justice</u>, 239 F. 3d 752, 756 (5th Cir. 2001)(quoting <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir. 1985)).  Mere allegations of medical malpractice are insufficient to meet the standard of deliberate indifference to an inmate's serious medical needs. (<u>Id</u>.).

In this case, plaintiff received continual treatment for his elevated blood pressure, as is documented in his medical records. Different medications were tried in an effort to keep his pressure under control.  According to prison officials, plaintiff was monitored to make sure that he took his medication as prescribed.

But more to the point, the individuals named as defendants herein did not fail to give plaintiff his medication, and plaintiff does not so contend.  If, in fact, plaintiff failed to receive his blood pressure medicine, thereby causing his pressure to elevate, it was not because the doctors or the Sheriff failed to authorize

17

it for his use.  If nurses or other staff failed to give the medication to him or if he got a week's supply and lost some of it, thereby shorting himself, there is no causal connection between the actions or inactions of the named defendants and plaintiff's failure to get his medications in a timely fashion. Absent such personal involvement on the part of the named defendants, plaintiff cannot prevail on a claim for deliberate indifference to his serious medical needs based on his failure to receive blood pressure medicine.

As to plaintiff's psychotropic medications, the jail medical records reflect that he received Cogentin and Stellazine together, as he should have.  However, if this is somehow in error, again it was not Dr. Higgin who passed out the medication.  If plaintiff failed to receive Cogentin, which appears to have been prescribed for him, while such may constitute malpractice by a nurse, that fact is insufficient to maintain a claim against Dr. Higgins. As noted earlier, the concept of <u>respondeat superior</u> is inapplicable to §1983 litigation for purposes of holding an employer or supervisor liable for the negligence of a subordinate.  <u>Harvey</u>, 754 F.2d at 572.

As to his third claim, i.e., that Dr. Higgins retaliated

18

against him for filing this lawsuit by placing him in restraints for 30 hours on the psychiatric unit, plaintiff likewise fails to set forth a claim upon which relief can be granted.  Pursuant to 41 U.S.C. §1997e(e), "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  Here, plaintiff does not contend that he suffered a physical injury as a result of being confined as stated above.   Even if his allegations as to the sanitary conditions in the suicide tier are accurate, disgusting as that might be, his claim as articulated to the Court is one for mental and emotional distress without the requisite physical injury.  Jones v. Greninger, 188 F.3d 322, 326 (5th Cir. 1999); Hall v. Mississippi, 2009 WL 648668 at *2 (N.D. Miss. March 12, 2009).

As to the various unnamed nurses who plaintiff attempted to name as defendants, these individuals are incapable of standing in judgment pursuant to Rule 17, Federal Rules of Civil Procedure. Not having been identified, they have not been served and have thus never been properly before the Court at any time.

## **RECOMMENDATION**

IT IS RECOMMENDED that the claims of plaintiff, Ricky P.

Curry, against defendants, Marlin Gusman, Criminal Sheriff of Orleans Parish, Dr. Higgins, and various unnamed nurses at Orleans Parish Prison be dismissed as frivolous pursuant to 28 U.S.C. §1915(e)(2)(B).

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en banc</u>).

New Orleans, Louisiana, this <u>9th</u> day of <u>December</u>, 2010.

ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE